UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INNOVATIVE RESEARCH TECHNOLOGY, INC., a Tennessee corporation,<br><br>                Plaintiff,<br>    v.<br><br>INTERNET TECHNOLOGY GROUP, INC., an Oklahoma corporation, et al.<br><br>                Defendant. | CASE NO. 2:24-cv-01263-TL<br><br>ORDER ON MOTION TO DISMISS |

This matter comes before the Court on Third-Party Defendant Michael Heisler's Motion to Dismiss for Lack of Personal Jurisdiction. Dkt. No. 30. This action arises out of a business relationship between Plaintiff Innovative Research Technology, Inc., ("IRT") and Defendant/Counter-claimant Internet Technology Group, Inc. ("ITG"). Having reviewed Defendant ITG's response (Dkt. No. 33), Third-Party Defendant Heisler's reply (Dkt. No. 38), and the relevant record, the Court GRANTS Third-Party Defendant Heisler's motion to dismiss (Dkt. No. 30).

## I. BACKGROUND

The Parties have provided competing narratives in their respective pleadings. *Compare* Dkt. No. 1 ¶¶ 3.1–3.60, *with* Dkt. No. 22 at 27–35. The Court recites each Party's factual assertions as they have been alleged.

**A.   The Parties and Their Distribution Agreement**

Plaintiff IRT is a Tennessee corporation with its principal place of business in Virginia. Dkt. No. 1 ¶ 1.1. Defendant ITG is an Oklahoma corporation with its principal place of business in Washington. *Id.* ¶ 1.2. Third-Party Defendant Michael Heisler resides in Nevada; he is Plaintiff IRT's sole shareholder. *Id.* ¶ 1.1.

Plaintiff IRT is the inventor of the Urinator, a "product designed to allow those wishing to protect their privacy with relation to their genetic material by providing synthetic urine and a discreet delivery system." *Id.* ¶¶ 3.1–3.2. The company has sold the Urinator in commerce since 1998 using the trademark "Urinator." *Id.* ¶ 3.3.

In or around November 2013, Plaintiff IRT entered into a distribution agreement with Defendant ITG to sell the Urinator product. *Id.* ¶ 3.6. Pursuant to the agreement, Defendant ITG was allowed to use the "Urinator" trademark in accordance with Plaintiff IRT's brand standards, and Plaintiff IRT granted Defendant ITG the right to use the "Urinator" wordmark on a limited basis when distributing the Urinator product. *Id.* ¶¶ 3.7–3.8. Under the agreement, Defendant ITG was allowed to utilize the Urinator mark in accord with Plaintiff IRT's brand standards, including marketing the Urinator exclusively as a method to protect genetic privacy. *Id.* ¶ 3.7. Plaintiff IRT could revoke at will both the distribution agreement and the license to utilize the Urinator trademark. *Id.* ¶ 3.8.

### B.     Plaintiff IRT's Complaint

On August 15, 2025, Plaintiff IRT filed a civil action in this Court, alleging six causes of action: federal trademark infringement (Dkt. No. 1 ¶¶ 4.1–4.11), federal false designation of origin (*id.* ¶¶ 4.12–4.17), state-law trademark imitation (*id.* ¶¶ 4.18–4.23), violation of the Washington Consumer Protection Act ("WCPA") (*id.* ¶¶ 4.24–4.28), common-law trademark infringement (*id.* ¶¶ 4.29–4.36), and breach of contract (*id.* ¶¶ 4.37–4.43). Plaintiff IRT's Complaint stems from alleged misconduct undertaken by Defendant ITG after Plaintiff IRT terminated its distribution agreement with Defendant ITG. *Id.* ¶¶ 3.9–3.12.

In October 2023, Plaintiff IRT discovered that Defendant ITG had been violating the distribution agreement by marketing the Urinator product as a way to bypass drug-testing protocols. *Id.* ¶ 3.9. Plaintiff IRT terminated the agreement and revoked Defendant ITG's permission to utilize the Urinator mark for any purpose. *Id.* ¶ 3.10. But even after the termination of the agreement, Defendant ITG continued to market the Urinator as its own device and falsely claimed ownership of the product. *Id.* ¶ 3.11. Further, Defendant ITG continued to utilize the "Urinator" trademark "to market a product sold through the domain TestClear.com that was similar to the Urinator [and] that ITG distributed." *Id.* ¶ 3.12. Plaintiff IRT claims that TestClear's product is marketed specifically as a device to circumvent urinalysis tests. *Id.* ¶ 3.13. Plaintiff IRT alleges that, in using the "Urinator" trademark to market TestClear's product, Defendant ITG "diluted the value of the Urinator mark and damaged the mark and brand's image." *Id.*

### C.     Defendant ITG's Counterclaims

On December 24, 2024, Defendant ITG answered Plaintiff IRT's complaint. Dkt. No. 22. Defendant ITG also brought counterclaims against Plaintiff IRT and Third-Party Defendant

1  Heisler.[1] *See id.* There are five counterclaims; only four of them have been brought against
2  Third-Party Defendant Heisler: false advertising (*id.* at 32–33 ¶¶ 43–48), violation of the WCPA
3  (*id.* at 33–34 ¶¶ 49–57), defamation/libel (*id.* at 34–35 ¶¶ 58–62), and tortious interference with
4  business expectancy (*id.* at 35 ¶¶ 63–67). The remaining counterclaim, for declaratory judgment
5  of non-infringement, is alleged exclusively against Plaintiff IRT. *Id.* at 31–32 ¶¶ 38–42.

6        Defendant ITG's narrative differs from that provided by Plaintiff IRT. For the purposes
7  of the instant motion, the material difference concerns the breakdown of the commercial
8  relationship between Plaintiff IRT and Defendant ITG. Where Plaintiff IRT alleges that it
9  terminated the agreement, Defendant ITG alleges that, "In October 2023, [Plaintiff] IRT
10  proposed a new Distributor Agreement, which was highly financially unfavorable to [Defendant]
11  ITG." *Id.* at 29 ¶ 20. Rather than accept the "unfavorable" agreement, "[Defendant] ITG chose to
12  terminate its selling partnership with [Plaintiff] IRT and sell its remaining inventory of genuine
13  URINATOR products that it had purchased from [Plaintiff] IRT." *Id.* at 29 ¶ 21. In response,
14  Plaintiff IRT and Third-Party Defendant Heisler retaliated. *Id.* at 29 ¶ 24. Plaintiff IRT and
15  Third-Party Defendant Heisler "embarked on a campaign of false statements designed to harm
16  ITG's reputation and business." *Id.* Specifically, Third-Party Defendant Heisler made improper
17  statements on three websites: Plaintiff IRT's websites (urinator.com and urinatorbt.com),
18  reddit.com, and the Better Business Bureau ("BBB") website. *See id.* at 30–31 ¶¶ 25–30.

19        On February 3, 2025, Third-Party Defendant Heisler filed the instant Motion to Dismiss
20  Defendant ITG's third-party counterclaims against him pursuant to Federal Rule of Civil
21  Procedure 12(b)(2)—that is, on the basis of lack of personal jurisdiction. Dkt. No. 30. On March

---

[1] Third-Party Defendant Heisler is not a party to the Plaintiff IRT's lawsuit. Defendant ITG has named him as an additional defendant in its counterclaims against Plaintiff IRT. Therefore, the Court refers to Heisler as a third-party defendant.

3, 2025, Defendant ITG responded. Dkt. No. 33. On March 14, 2025, Third-Party Defendant Heisler filed a reply. Dkt. No. 38.

## II.   LEGAL STANDARD

For a court to constitutionally exercise personal jurisdiction over a non-resident defendant, a plaintiff must show that the defendant has or had "certain minimum contacts with the state," such that exercising jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The central concern of personal jurisdiction is the relationship between the defendant, the forum state, and the litigation. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). The defendant's conduct and connection with the forum state must be sufficiently purposeful that the defendant would reasonably anticipate being brought into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

"Under the due process analysis, a defendant may be subject to either general or specific personal jurisdiction." *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n. 9 (1984)). General jurisdiction applies when a defendant's activities are substantial or continuous and systematic in the state such that they "approximate physical presence in the forum state," even if the cause of action is unrelated to the activities. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). For specific jurisdiction to apply, the suit must arise out of or relate to the defendant's contacts with the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). Because due process requires that individuals have fair warning that a particular activity may subject them to jurisdiction, this fair-warning notice is satisfied under specific jurisdiction if the defendant purposefully directed their activities at the residents of the forum state, and the litigation results from alleged injuries that arise out of or relate to the defendant's activities. *Id.*

# III. Discussion

**A.    Whether Third-Party Defendant Heisler Consented to Personal Jurisdiction**

As an initial matter, the Court addresses Defendant ITG's argument that "the Court [has] jurisdiction over [Third-Party Defendant Heisler] because [Third-Party Defendant] Heisler directed his agent, [Plaintiff] IRT, to file this action in the Western District of Washington." Dkt. No. 33 at 9. This argument fails because, as Third-Party Defendant Heisler asserts, "[Plaintiff] IRT is not [Third-Party Defendant] Heisler's agent." Dkt. No. 38 at 3. In fact, quite the opposite is true: "[A] corporate officer is an agent for the corporation." *Sons of Norway v. Boomer*, 10 Wn. App. 618, 623, 519 P.2d 28 (1974).[2]

Defendant ITG's argument is semantic, focusing on Third-Party Defendant Heisler's assertion that he is "[Plaintiff] IRT's principal." *See* Dkt. No. 33 at 9 (citing Dkt. No. 30 at 7). But the context here demonstrates that Third-Party Defendant Heisler was identifying himself as the primary corporate officer of Plaintiff IRT, not as the "principal" in a principal-agent relationship. *See* Dkt. No. 38 at 3 ("[Third-Party Defendant] Heisler[']s identif[ication] as a 'principal' of the corp. refers [] to his status within the company, not a principal-agent relationship wherein the company is an agent of [Third-Party Defendant] Heisler."); *see also State v. Chase*, 1 Wn. App. 2d 799, 801, 407 P.3d 1178 (2017) (identifying individual who was corporation's "president, secretary, treasurer, and chairman of the board" as that corporation's "principal officer").

---

[2] The Court applies Washington law here, because there is virtually no difference between the law of the forum state—Washington—and the law of the state of Plaintiff IRT's incorporation—Tennessee. *See Marshall v. Hipcamp, Inc.*, 735 F. Supp. 3d 1283, 1292 (W.D. Wash. 2024) (applying law of forum state because laws of competing states were "materially the same"); *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002) ("[A] corporation can act only through the authorized acts of its corporate directors, officers, and other employees and agents. Thus, the acts of the corporation's agents are attributed to the corporation itself.").

"As with a corporation's duties in every other sphere in which it operates, it is the corporate officers, directors, and other agents who must discharge its duties in a lawsuit." *Diaz v. Wash. State Migrant Council*, 165 Wn. App. 59, 76–77, 265 P.3d 956 (2011). That Third-Party Defendant Heisler, acting in his capacity as Plaintiff IRT's principal officer, submitted a pleading on the company's behalf does not render him an independent entity, acting to further his own purposes outside the corporate structure. Such a conclusion would require the Court to pierce the corporate veil, which Defendant ITG has neither argued nor requested. To pierce the corporate veil and impute Plaintiff IRT's actions to Third-Party Defendant Heisler personally, Defendant ITG "must demonstrate that the corporate form was used to violate or evade a duty, and that it must be disregarded to prevent loss to an innocent party." *Wash. Water Jet Workers Ass'n v. Yarbrough*, 151 Wn.2d 470, 503, 90 P.3d 42 (2004). It simply has not done so.

In sum, Third-Party Defendant Heisler has not consented to personal jurisdiction.

**B.   General Jurisdiction**

Defendant ITG does not assert that the Court has general personal jurisdiction over Third-Party Defendant Heisler. The Court will therefore not examine whether general jurisdiction applies here.

**C.   Specific Jurisdiction**

In the Ninth Circuit, courts use a three-prong test to analyze whether minimum contacts exist to support specific personal jurisdiction: (1) the defendant must "purposefully direct" its activities to the forum or "purposefully avail" itself of the benefits afforded by the forum's laws; (2) the claim must "arise out of or relate to the defendant's forum-related activities"; and (3) the exercise of jurisdiction must comport with fair play and substantial justice—i.e., it must be reasonable. *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1161–62 (9th Cir. 2023). "The plaintiff bears the burden of satisfying the first two prongs of the test," after which the

burden shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802. Absent an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Further, when considering these first two prongs, "a strong showing on one axis will permit a lesser showing on the other." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (en banc). However, if a plaintiff fails to establish any one of the requirements, then a court cannot exercise personal jurisdiction over a nonresident defendant without violating due process of law. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) ("'If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law.'" (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995))).

The purposeful-direction analysis is most often used in tort cases. *Schwarzenegger*, 374 F.3d at 802. A showing of purposeful direction consists of evidence of the defendant's actions outside the forum state that are directed *at* the forum *Id.* at 803. Courts determine purposeful direction by applying an "effects test" that focuses on the forum where the defendant's actions were felt. *See Calder v. Jones*, 465 U.S. 783, 789 (1984); *see also Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). The effects test requires the defendant to have allegedly committed: (1) an intentional act, (2) expressly aimed at the forum state, (3) that caused harm that the defendant knew would likely be suffered in the forum state. *Mavrix*, 647 F.3d at 1128. The Supreme Court has explained that conduct supporting purposeful direction must be predicated on the specific intention of the defendant and not be random, isolated, or fortuitous. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).

1. **Intentional Act**

In applying the effects test here, the first question is whether Third-Party Defendant Heisler committed an intentional act. The Court makes short work of this inquiry. There is no dispute that Third-Party Defendant Heisler intentionally made the posts at issue. *See* Dkt. No. 22 at 29–31 ¶¶ 25–30. Plaintiff IRT has admitted that: (1) the Reddit posts came from Third-Party Defendant Heisler's account; and (2) Third-Party Defendant Heisler is the author of the posts and comments in the Reddit thread. *See* Dkt. No. 28 ¶ 29. Plaintiff IRT admits further that Third-Party Defendant Heisler made a complaint to the BBB website under the name "Mike Smith." *Id.* ¶ 30. Therefore, the Court concludes that Third-Party Defendant Heisler committed an intentional act.

2. **Expressly Aimed**

Where, as here, the issue concerns online activity, to satisfy the "expressly aimed" requirement, a defendant must have operated or used the website at issue *in conjunction with something more*, such as conduct directly targeting the forum. *Mavrix*, 647 F.3d at 1229 (examining the interactivity of the website, the geographic scope of the website, and whether the defendant individually targeted a plaintiff to determine if a nonresident defendant had done "something more"). For example, in *Cybersell Inc. v. Cybersell, Inc.*, the court found that a defendant's mere operation of a website that could be accessed from anywhere was insufficient, on its own, to satisfy the expressly-aimed element. 130 F.3d 414, 418 (9th Cir. 1997). The *Cybersell* court also distinguished between "passive websites," which simply make information available to visitors, and "interactive websites," where users exchange information with one another. *Id.*; *see also Mavrix*, 647 F.3d at 1231 ("Not all material placed on the internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed.").

Here, Third-Party Defendant Heisler is alleged to have posted misleading content on Plaintiff IRT's own website, malicious and disparaging comments on Reddit, and a complaint on the BBB website. Dkt. No. 22 at 29–31 ¶¶ 25–30. As to Plaintiff IRT's website, Defendant ITG alleges that Plaintiff IRT's website (urinator.com) features "cherry-picked negative reviews . . . from customer complaint websites [regarding ITG's TestClear products]," and that "[u]pon information and belief, Heisler wrote and/or authorized these false and misleading statements." *Id.* at 29 ¶ 25. As to Reddit, Defendant ITG alleges that Third-Party Defendant Heisler, under the username Several-Orange-6730, made "malicious and disparaging posts about ITG on Reddit," and that some of those posts directed readers to the complaint made on the BBB website. *Id.* at 30 ¶ 29. As to the BBB website, Defendant ITG alleges that Third-Party Defendant Heisler used a fake name and submitted a complaint to the website, "falsely alleging that ITG is engaging in a 'bait-and-switch campaign' to taint ITG's reputation and hurt its business." *Id.* at 31 ¶ 30.

Defendant ITG claims that these postings were directed at and viewed by people across the United States, including in Washington, and that consumers searching for ITG's TestClear products are likely to find these false statements. *Id.* at 31 ¶ 32. Furthermore, Defendant ITG claims that Third-Party Defendant Heisler's statements concerned products located, marketed, and sold in Washington. *Id.* at 29–31 ¶¶ 24–30; *see also* Dkt. No. 33 at 4. Defendant ITG also alleges that Third-Party Defendant Heisler's complaint to the BBB website was directed at Washington, because "the Better Business Bureau's website is state-specific . . . [and ITG] only appears on the Washington State Better Business Bureau website." Dkt. No. 33 at 3 n.2.

For his part, Third-Party Defendant Heisler argues that he never purposefully availed himself of Washington, because "[t]he State of Washington is neither mentioned nor the 'aim' for jurisdictional purposes to any of these averments." Dkt. No. 30 at 17. He further claims that although the use of the generalized website might have let people in Washington see the posts,

this generalized viewership is not sufficient to establish that he specifically targeted Washington. *Id.* at 18.

The Court agrees with Third-Party Defendant Heisler. First, none of the websites where the comments were posted (*i.e.*, Plaintiff IRT's website, Reddit, and the BBB website) is focused on Washington. While Defendant ITG claims the BBB website was directed at Washington, this alleged fact is raised for the first time in its response to the motion to dismiss.[3] Dkt. No. 33 at 3 n.2. On a motion to dismiss, a court generally may not consider additional facts asserted beyond the complaint in a plaintiff's moving papers. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss") (emphasis in original)); *see also* 2 Moore's Federal Practice – Civil § 12.34[2] (2025) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)."). Second, the comments on Plaintiff IRT's website, the Reddit posts, and the complaint filed to the BBB website all lack a forum-specific focus. As described in the allegations, the comments are about the Urinator product itself; they do not specifically discuss, for example, where it might be manufactured, marketed, purchased, or used. *See* Dkt. No. 22 at 29–31 ¶¶ 25–30. Simply put, there is nothing that is particularly "Washington" about them. Defendant ITG has thus failed to show that Third-Party Defendant Heisler's actions were directed specifically at Washington.

In Third-Party Defendant Heisler's reply brief, Third-Party Defendant Heisler asserts that the "undersigned has viewed the Reddit link . . . [and that] [t]he undersigned has viewed the

---

[3] Although links were included for the other websites, no link was included for the BBB comment. *Compare* Dkt. No. 22 at 29–31 ¶¶ 25–29, *with id.* at 31 ¶ 30.

ORDER ON MOTION TO DISMISS - 11

1  provided link [for the BBB post]."[4] Dkt. No. 38 at 2. Upon his own review, Third-Party

2  Defendant Heisler claims that nothing on the Reddit page was aimed at Washington, and that

3  there was nothing indicating that the audience of the posts was specifically from Washington. *Id.*

4  As to the BBB website, Third-Party Defendant Heisler claims "the only mention of Washington

5  on the page is ITG's address identified in the far left corner . . . ." *Id.* at 3. Third-Party Defendant

6  Heisler claims further that the BBB organization and website appear to be national in scope, and

7  that the term "Washington State Better Business Bureau" is not located on the page. *Id.* Finally,

8  Third-Party Defendant Heisler claims that Plaintiff IRT's website—a site with which he is

9  presumably familiar—is not Washington-specific. *Id.* at 1. These assertions are unrebutted.

10  Defendant ITG could have sought leave to file a sur-reply to address these assertions, which cut

11  to the heart of its purposeful-direction argument, but it did not. *See, e.g.*, *Int'l Air Med. Servs.*

12  *Inc. v. Triple-S Salud Inc.*, No. C15-149, 2015 WL 5158832, at *2 (D. Ariz. Dec. 14, 2015) ("[I]f

13  Plaintiffs had felt it necessary to address [points raised in Defendant's] reply, they could have

14  sought leave from the Court to file a surreply or could have requested oral argument.").

15  　　Moreover, Defendant ITG has not clearly alleged that the posts mentioned Washington or

16  Washington residents, or that Third-Party Defendant Heisler took any affirmative steps to direct

17  the posts to a Washington audience. Instead, Defendant ITG suggests that Third-Party Defendant

18  Heisler expressly aimed tortious activity at Washington because "Heisler's false statements arose

19  out of a decade-long business relationship with a Washington State company and referred to

---

[4] But it is important to note that under Local Civil Rule 7(b)(1)(A): "If the motion requires the consideration of facts not appearing of record, he or she shall also serve and file copies of all affidavits and photographic or other documentary evidence he or she intends to present in support of the motion." Third-Party Defendant Heisler did not include a declaration or any similar evidence with his reply brief. The Court discusses these facts as alleged to remind the Parties of their procedural requirements and to provide guidance should Defendant ITG refile its claims against Third-Party Defendant Heisler. Consideration of these facts does not affect the outcome of the Court's decision here.

products sold from Washington and marketing allegedly direct from Washington." Dkt. No. 33 at 6; *see also* Dkt. No. 22 at 28–29 ¶¶ 10–24. However, although Third-Party Defendant Heisler may have used his personal knowledge to foresee that these posts were likely to attract a substantial number of viewers in Washington, this alone does not support a finding of express aiming. *See, e.g.*, *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020) (finding that although the defendant could have foreseen that a website would attract a substantial number of viewers in the United States, that alone does not support a finding of express aiming toward U.S. viewers); *Walden v. Fiore*, 571 U.S. 277, 289 (2014) (finding that defendant's knowledge of a plaintiff's strong forum connections is not sufficient to establish minimum contacts); *Pebble Beach Co.*, 453 F.3d at 1158 (finding that an argument that relied almost exclusively on possible foreseeable effects did not satisfy the expressly-aimed prong); *Asher Worldwide Enter. LLC v. Sur La Table, Inc.*, No. C11-1183, 2012 WL 112641, at *5 (W.D. Wash. Jan. 10, 2012) ("While it may have been foreseeable that plaintiff may suffer some harm from diminished sales in Washington as a result of Defendants' alleged infringement, Plaintiff does not allege that Defendants intended specifically to harm its sales in Washington.").

Therefore, the Court finds that Defendant ITG has not provided sufficient evidence that Third-Party Defendant Heisler expressly aimed his activities at Washington. The purposeful-direction prong is thus not satisfied.

Because Defendant ITG has not shown purposeful direction, an essential element of specific jurisdiction, the Court need not address the remaining elements of specific jurisdiction. *See, e.g.*, *Swartwood v. Frazier Equip., LLC*, No. C17-5971, 2020 WL 2767371, at *3 (W.D. Wash. May 28, 2020) (granting motion to dismiss after "finding that Plaintiffs have failed to establish purposeful direction, an essential element of specific jurisdiction"); *J.A.A. v. Rawlings Co., LLC*, No. C19-1036, 2019 WL 5889082, at *4 (W.D. Wash. Nov. 12, 2019) ("Lacking an

intentional act purposefully directed at the State of Washington, Plaintiff has failed to establish personal jurisdiction in this Court."); *Schwarzenegger*, 374 F.3d at 802 (holding that failure to establish purposeful direction results in a failure to establish specific jurisdiction).

D.     **Leave to Amend**

"Normally, when a viable case may be pled, a district court should freely grant leave to amend." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011). Where deficient pleadings can be cured by allegations of additional facts, courts generally give plaintiffs leave to amend. *See Cook, Perkiss & Liehe, Inc., v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegations of other facts."); *Cole v. Amazon.com Servs. LLC*, No. C24-1147, 2025 WL 415811, at *6 (W.D. Wash. Feb. 6, 2025) (granting plaintiff leave to amend after granting defendants' motion to dismiss, because plaintiff's causes of action could be repleaded as viable claims with additional facts).

Here, Defendant ITG claims that it can plead additional specific allegations on how Third-Party Defendant Heisler targeted and aimed his conduct at Washington and Washington consumers. Dkt. No. 33 at 11–12. It is not evident in Third-Party Defendant Heisler's argument that amendment would be futile, as there may be additional facts to support the claim of specific personal jurisdiction. Therefore, Defendant ITG's third-party counterclaim is DISMISSED with leave to amend.

IV.     CONCLUSION

Accordingly, Third-Party Defendant Heisler's Motion to Dismiss (Dkt. No. 30) is GRANTED. It is hereby ORDERED:

(1)     Defendant ITG's third-party counterclaim against Third-Party Defendant Heisler is DISMISSED WITHOUT PREJUDICE.

ORDER ON MOTION TO DISMISS - 14

(2)    If Defendant ITG opts to refile its claims against Third-Party Defendant Heisler, it SHALL do so **no later than June 2, 2025.**

Dated this 2nd day of May 2025.

Tana Lin<br>
United States District Judge